**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

JOSEPH LOMASTRO                                      CIVIL ACTION NO. 05-320

VERSUS                                               JUDGE S. MAURICE HICKS, JR

CADDO PARISH SHERIFF                                 MAGISTRATE JUDGE HORNSBY


**MEMORANDUM RULING**

Joseph Lomastro ("Lomastro") filed the instant suit against the Caddo Parish Sheriff ("the Sheriff") alleging he was discriminated against in violation of the Americans with Disabilities Act ("ADA") and Louisiana state law. Before the Court is the Sheriff's Motion for Summary Judgment [Doc. No. 27] which seeks to have all of Lomastro's claims dismissed. The Sheriff has also moved to strike some of the evidence submitted by Lomastro in opposition to the motion for summary judgment. [Doc. No. 38]. After reviewing the entire record, the Court finds that summary judgment in favor of the Sheriff is proper as a matter of fact and law. Because the evidence to which the Sheriff objects is not material to the Court's ruling, the motion to strike is denied as moot.

I.      **RELEVANT FACTUAL BACKGROUND.**

Due to a high fever at birth, Joseph Lomastro suffered from weekly, intractable seizures until he underwent brain surgery in May of 2000 (at the age of 22) to remove scar tissue from his brain. [Doc. No. 32, Exhibit A (Affidavit of Joseph Lomastro) at ¶ II. On November 8, 2002, Lomastro applied for an entry level corrections position with the Caddo Parish Sheriff's Office and received a conditional offer of employment on November 12, 2002. [Rec. Doc. 27, Exhibit B (Affidavit of Jobie Moore) at ¶4]. However, Lomastro

disclosed his history of seizures preceding his surgery and advised that he was taking medication as a precaution. [Id. at ¶5]. He also submitted a note from a physician indicating he was able to work without restriction. [Id.]

The Sheriff's Office sent Lomastro to Willis Knighton Work Kare. The occupational physicians at Work Kare generally advised that Lomastro had an increased risk of seizures. On the other hand, Lomastro's physicians indicated that he was medically able to perform the job and that his risk of seizure was no more than that of any other person.[1] In the end, Lomastro was denied the corrections position based on the Sheriff's belief that he suffered from "some type of seizure problem" and had a risk of seizures.[2] [Doc. No. 27, Exhibit A (Affidavit of Sheriff Steve Prator) at ¶ 2].

The available position was for a corrections deputy who would work in the housing units at the Caddo Correctional Center. [Id.] Due to the nature of the position, the Sheriff was concerned that if a deputy had a seizure while working at the housing unit, it could have serious ramifications to the safety of both the Sheriff's personnel and the inmates. [Id.] After speaking with his management personnel, the Sheriff ultimately decided that he was not comfortable approving Lomastro for the corrections position. [Id.] However, the Sheriff offered Lomastro a position as an Administrative Clerk I at the Caddo

_____

[1]Both parties have submitted evidence concerning whether Lomastro was medically able to perform the job and whether the Sheriff was justified in denying him the position based on his past seizures. However, since the Court finds that Lomastro is not afforded protection by the ADA, that issue is immaterial to the Court's ruling.

[2]Lomastro has also submitted evidence suggesting that he was denied the position because he could not carry a firearm due to his anti-seizure medication or because he did not satisfy DOT guidelines. He argues that neither of these reasons have merit since the corrections deputies do not carry guns and need not drive vehicles. Again, since the Court finds that Lomastro is not covered by the ADA, that issue is immaterial to the Court's ruling.

Correctional Center, which Lomastro accepted. [Rec. Doc. 27, Ex. A at ¶2; Ex. B at ¶¶ 7, 10-11].[3]

Lomastro reapplied for a corrections position in July of 2003 and was again sent to Work Kare. One of the doctors, Dr. Goel, examined Lomastro and did not recommend approving him for the position. [Rec. Doc. 27, Ex. B at ¶ 8]. However, another doctor, Dr. Dossey, concluded that Lomastro could perform the corrections officer position. [Id. at ¶9]. While Dr. Dossey agreed that Lomastro could not satisfy what he referred to as the "DOT standard" or the firefighter standard, he found a Massachusetts patrol officer standard under which Lomastro could be hired. Despite Dr. Dossey's opinion, the Sheriff decided to follow Dr. Goel's recommendation. [Id.] Accordingly, Lomastro was again denied the corrections deputy position.

On March 19, 2004, the Equal Employment Opportunity Commission issued a determination finding reasonable cause to believe that the Sheriff had violated the ADA. The instant suit was filed on February 22, 2005.

## II.    LAW AND ANALYSIS.

### A.    Summary Judgment Standard.

Summary judgment will be granted when "... the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P.56(c); See Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548 (1986); Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994).

---

[3]Within about 5 weeks, Lomastro was promoted to Administrative Clerk II. [Id., Ex. B at ¶ 7]. He continued to work as an Administrative Clerk II until he resigned on May 28, 2004.

The party moving for summary judgment must demonstrate the absence of a genuine issue of material fact. Liquid Air Corp., 37 F.3d at 1075. A dispute over a material fact is genuine, if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Kee v. City of Rowlett Texas, 247 F.3d 206, 210 (5th Cir. 2001). If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response. Liquid Air Corp., 37 F.3d at 1075.

If the movant does, however, meet this burden, the burden shifts and the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial. Celotex, 477 U.S. 317, 106 S.Ct. 2548. To that end, the Court must view the facts and the inferences to be drawn therefrom in the light most favorable to the nonmoving party. Ameristar Jet Charter v. Signal Composites, 271 F.3d 624, 626 (5th Cir. 2001). However, the Court will not assume that the nonmoving party could or would prove the necessary facts. Liquid Air Corp., 37 F.3d at 1075. The nonmoving party's burden will not be satisfied by "some metaphysical doubt as to the material facts," by "conclusory allegations," by "unsubstantiated assertions," or by only a "scintilla" of evidence. Id. Therefore, summary judgment is appropriate in any case "where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." Armstrong v. City of Dallas, 997 F.2d 62 (5th Cir. 1993); see generally Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S.Ct. 1348, 1356 (1986).

With these principles in mind, we now turn to a review of the claims at issue in the instant case.

**B.      Discrimination Under the Americans with Disabilities Act.**

To prevail on a discrimination claim under the ADA, a plaintiff must prove that 1) he has a disability; 2) he is a qualified individual for the position; and 3) there was an adverse employment decision. Turco v. Hoechst Celanese Corp., 101 F.3d 1090, 1092 (5th Cir.1996).  Accordingly, whether Lomastro was "disabled" is a threshold issue.

Under the ADA, a "disability" is defined as:

(A)      physical or mental impairment that substantially limits one or
         more of the major life activities of such individual;

(B)      a record of such an impairment; or

(C)      being regarded as having such an impairment.

42 U.S.C. §12102(2).  Since Lomastro does not claim to be actually disabled, he is not afforded protection under the ADA unless he can show that he had a "record of" a disability or that he was "regarded as" disabled.

### *1.      "Record of" disability.*

This prong of the ADA entitles a plaintiff to protection if he can show that both: (1) he has a record or history of impairment; and (2) the impairment limits a major life activity. Dupre v. Charter Behavioral Health Systems of Lafayette, Inc., 242 F.3d 610, 615 (5th Cir.2001).  Although an individual may show that he has a record of impairment, if he fails to show that the impairment is substantially limiting, the individual may not qualify as disabled under this prong.  See Sherrod v. American Airlines, Inc., 132 F.3d 1112, 1121 (5th Cir.1998).

A "major life activity" includes such functions as "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working."  29 C.F.R. §1630.2. "Substantially limited"  means "[u]nable to perform a major life activity that

the average person in the general population can perform;" or "[s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner or duration under which the average person in the general population can perform that same major life activity." 29 C.F.R. §1630.2(j). In determining whether an individual is substantially limited in a major life activity, the regulations instruct that the following factors should be considered: the nature and severity of the impairment; the duration or expected duration of the impairment; and the permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment. 29 C.F.R. §1630.2(j)(2). See also Toyota Manufacturing, Kentucky, Inc. v. Williams, 534 U.S. 184, 122 S.Ct. 681, 151 L.Ed. 2d 615 (2002).

In the instant matter, Lomastro has a record or history of seizures. The determinative issue then becomes whether those seizures limited a major life activity. Instead of addressing the impact that his past seizures had on his life activities, Lomastro argues that his seizures constitute epilepsy and that epilepsy is a disability *per se.* However, the Fifth Circuit has expressly rejected that argument:

> A person with epilepsy can certainly be disabled under the ADA. Indeed, epilepsy is one of the disabling conditions that Congress contemplated when it passed the ADA. The analysis does not stop at this level of generality, however. The determination of whether a person is disabled is an individualized inquiry, particular to the facts of each case. Thus, the crucial question in this case is whether [plaintiff's] epilepsy substantially limited one of her major life activities.

EEOC v. Sara Lee Corp., 237 F.3d 349, 352 (5th Cir. 2001)(internal citations omitted). See also Deas v. River West, 152 F.3d 471 (5th Cir. 1998). Since Lomastro has not submitted competent summary judgment evidence that his seizures substantially limited any of his

major life activities, his record of such seizures does not constitute a record of a "disability." See Blanks v. Southwestern Bell Communications, Inc., 310 F.3d 398 (5th Cir. 2002). Accordingly, Lomastro has failed to show that he is disabled under this prong of the ADA.

### 2.    "Regarded as" disabled.

In Sutton v. United Airlines, Inc., 119 S.Ct. 2139 (1999), the Supreme Court identified two ways in which individuals may be "regarded as" disabled under the ADA:

(1)    a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities; or

(2)    a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities.

Id. at 2149-50.  As the Fifth Circuit has formulated the standard on summary judgment, to make a *prima facie* showing of disability under the "regarded as" prong, a plaintiff must have produced sufficient evidence for a reasonable trier of fact to conclude (1) that the defendant perceived him as having an "impairment" and (2) that this impairment, if it existed as perceived by the defendant, would have substantially limited one or more of his major life activities.  Deas v. River West, L.P., 152 F.3d 471, 476 (5th Cir.1998). See also Sutton, 119 S.Ct. at 2150.   Here, Lomastro claims that the Sheriff perceived his epilepsy/history of seizures as substantially limiting him in two major life activities: "consciousness/voluntary actions" and "working."

### (a)    Major life activity of consciousness and voluntary acts like walking and talking.

Lomastro argues that a person with epilepsy experiences a lack of consciousness and is unable to engage in a number of voluntary acts such as talking and walking.  To support his argument, he again cites the cases which state that epilepsy is a disability.

However, as shown *supra*, the Fifth Circuit has already rejected the notion of epilepsy as a *per se* disability. The Fifth Circuit has also rejected an argument almost identical to that advanced by Lomastro: "We decline to accept the broad proposition that every temporary loss of "awareness," no matter how brief, necessarily constitutes a substantial limitation of the major life activities of seeing, hearing, and speaking." Deas v. River West, 152 F.3d 471, 479 (5th Cir. 1998). The Sheriff's belief that Lomastro was "not in control" during a seizure is insufficient to show that the Sheriff perceived him as being *substantially limited* in any major life activities.

### *(b)     Major life activity of working.*

Lomastro also argues that the Sheriff perceived him as being substantially limited in the major life activity of working. However, "an employer's belief that an employee is unable to perform one task with an adequate safety margin does not establish *per se* that the employer regards the employee as having a substantial limitation on his ability to work in general." Foreman v. Babcock & Wilcox Co., 117 F.3d 800, 807 n.10 (5th Cir. 1997)(*quoting* Chandler v. City of Dallas, 2 F.3d 1385 (5th Cir.1993) *and citing* Forrisi v. Bowen, 794 F.2d 931 (4th Cir.1986)(holding that an employer did not regard the employee as handicapped simply because it found that he could not meet the demands of a particular job)). Instead, a plaintiff must demonstrate that the defendant believed that he was "unable to work in a broad class of jobs." Sutton v. United Air Lines, Inc., 527 U.S. 471, 491, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999); see also 29 C.F.R. § 1630.2(j)(3)(i). To that end, Lomastro must show that the Sheriff perceived him to be "precluded from more than one type of job, a specialized job, or a particular job of choice." Sutton, 527 U.S. at 492, 119 S.Ct. 2139.

The Sheriff does not dispute that he determined that Lomastro was unable to work as a corrections deputy, which is the entry level position for all "P.O.S.T." certified deputy positions.[4]  The legal issue before the Court is whether the position of corrections deputy or "P.O.S.T. certified" deputy constitutes a "class of jobs."[5]  The Fifth Circuit addressed a very similar issue in Bridges v. City of Bossier, 92 F.3d 329, 334-36 (5th Cir.1996).  In that case, the court held in a matter of first impression that firefighting jobs, including associated municipal paramedics or EMTs, was too narrow a field to describe a "class of jobs."  Id. at 336.  The Bridges court also cited with approval Daley v. Koch, 892 F.2d 212, 215 (2d Cir.1989), which held that being declared unsuitable for the particular position of police officer was not a substantial limitation of a major life activity.  See also Muller v. Costello, 187 F.3d 298, 313 (2nd Cir. 1999)(position of correctional officer constitutes a single, particular job, and a limitation on a single, particular job cannot constitute a substantial limitation of the major life activity of working).

Lomastro cites Rodriguez v. Conagra Grocery Products Company, 436 F.3d 468 (5th Cir. 2006) in support of his contention that the Sheriff perceived him as being substantially limited in the major life activity of working.  However, the employer in Rodriguez viewed the plaintiff as unfit for a position that "required only the most basic skills

---

[4]At the completion of the training academy the recruits are "P.O.S.T." certified corrections deputies, which refers to their level of training.  [Rec. Doc. 27, Ex. B at ¶4].

[5]The Court finds no evidentiary support in the record for Lomastro's contention that the Sheriff perceived him to be unable to work in "law enforcement" in general.  To the contrary, the Sheriff testified in his deposition that there are some P.O.S.T. certified positions which he believes a person at risk for seizures could perform.  Personnel Manager Gayle Russell's alleged "you might want to rethink your career" comment after Lomastro's second denied application is insufficient to show that the Sheriff perceived him to be unable to work in a "class of jobs."  Firefighting can be considered a career, yet the Fifth Circuit has held it to be too narrow to constitute a "class of jobs."

and abilities, virtually any able-bodied person could perform." Further, the employer in

Rodriguez admitted that it considered the plaintiff unfit for *any* position at its facility. Here,

after receiving conflicting medical opinions, the Sheriff rejected Lomastro for a corrections

deputy position but hired him for another vacant position. Accordingly, Rodriguez is

inapposite.

Relying on the Fifth Circuit's opinion in Bridges and the authorities cited above, this

Court finds that a corrections deputy or a P.O.S.T. certified deputy, like a firefighter or a

police officer, is a single, particular job which is too narrow to constitute a "class of jobs."[6]

There is simply no indication in the record that the Sheriff regarded Lomastro as

"substantially limited as to anything more than a few, highly specialized jobs that required

relatively high levels of vigilance or uninterrupted awareness." See Deas v. River West,

152 F.3d 471, 481 (5th Cir. 1998).

Since Lomastro cannot show that he had a "record of" a disability or was "regarded

as" disabled, he is not afforded protection by the ADA. As the Supreme Court stated in

Sutton:

> By its terms, the ADA allows employers to prefer some
> physical attributes over others and to establish physical
> criteria. An employer runs afoul of the ADA when it makes an
> employment decision based on a physical or mental
> impairment, real or imagined, that is regarded as substantially
> limiting a major life activity. Accordingly, an employer is free
> to decide that physical characteristics or medical conditions

---

[6]The Sheriff wants to categorize the issue as whether the position of *corrections deputy* constitutes a "class of jobs." Since a corrections deputy is the entry level position for all P.O.S.T. certified deputy positions, Lomastro wants to categorize the issue as whether the broader position of *P.O.S.T. certified deputy* constitutes a "class of jobs." However, the Court need not decide the appropriate classification of the position since it finds that even the broader position of *P.O.S.T. certified deputy* is too narrow to constitute a "class of jobs" under the ADA and the Fifth Circuit jurisprudence.

> that do not rise to the level of an impairment-such as one's height, build, or singing voice-are preferable to others, just as it is free to decide that some limiting, but not substantially limiting, impairments make individuals less than ideally suited for a job.

Sutton, 527 U.S. at 490-491, 119 S.Ct. at 2150.  Accordingly, the Sheriff's belief that Lomastro's history of seizures, while not substantially limiting, made him less than an ideal candidate for the position of corrections deputy or P.O.S.T. certified deputy, did not violate the ADA.[7]  Since the analysis is fundamentally the same under Louisiana state anti-discrimination law, Lomastro's state law claims are likewise without merit.  See Downey v. Strain, 2006 WL 378591 (E.D. La.); Thomas v. Louisiana Casino Cruises, Inc., 886 So.2d 468 (La. App. 1 Cir. 2004).

## III.    CONCLUSION.

Since Lomastro has failed to show that he was disabled, as that term is defined by the ADA and the relevant jurisprudence, he has failed to establish a *prima facie* claim of disability discrimination under federal or state law.  There are no genuine issues of material fact and summary judgment is proper as a of fact and law.

Therefore:

**IT IS ORDERED** that the Caddo Parish Sheriff's Motion for Summary Judgment [Doc. No. 27] is **GRANTED**, and that Joseph Lomastro's claims be **DISMISSED**, with prejudice, at his sole cost.

---

[7]The EEOC's finding of "reasonable cause" is insufficient to create a material issue of fact, since the Court finds as a matter of law that Lomastro was not covered by the ADA.

**IT IS FURTHER ORDERED** that the Sheriff's Motion to Strike Summary Judgment Evidence [Doc. No. 38] is **DENIED** as moot, since the evidence to which the Sheriff objects is not material to the Court's ruling.

**THUS DONE AND SIGNED**, Shreveport, Louisiana, this 29th day of June, 2006.

_____

S. MAURICE HICKS, JR.

UNITED STATES DISTRICT JUDGE
